| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK | Hearing Date and Time:<br>January 20, 2010 @ 10:00 A.M. |

------------------------------------------------------------x

In re:                                                                    Chapter 11

CROWN OHIO INVESTMENTS LLC,              Case No. 109-46767-DEM

                                              Debtor.

------------------------------------------------------------x

## SUPPLEMENTAL MEMORANDUM OF LAW

### I.    PRELIMINARY STATEMENT

This Supplemental Memorandum of Law is submitted on behalf of Crown Ohio Investments, LLC (the "Debtor") in response to the Court's request for additional papers concerning the Debtor's rights to utilize an interest reserve of more than $70,000 (the "Reserve") maintained by movant Wells Fargo Bank, N.A. as Trustee ("Wells Fargo") under the Debtor's Assumption and Release Agreement (the "Agreement"). Pursuant to this Agreement, the Debtor effectively assumed a first mortgage loan in the principal sum of $1,960,000 in December of 2007.

Wells Fargo has supplemented its pending motion seeking relief from the automatic stay to include grounds under 11 U.S.C. § 362(d)(3). The Debtor countered with the argument that debt service payments are available to Wells Fargo from the existing Reserve and Wells Fargo cannot justly, equitably or fairly obtain stay relief on this ground when it refuses to use the funds already on

deposit and available for the purpose of paying debt service during times of defaults.

At the hearing on December 21, 2009, the Court requested additional papers from the parties as to the specific language which the parties rely upon concerning the Reserve.

## II. <u>THE AGREEMENT</u>

Interestingly, and perhaps portending this situation, the Reserve derives out of a provision of the Agreement, denominated as "Cash Collateral Reserve". The Reserve was established by the Debtor, remains the estate's property subject to Wells Fargo's security interest and was listed in the Debtor's schedule under B(35) which states "Reserve Account - $75,000".

The precise language creating the Reserve is found in paragraph 2(k) of the Agreement, which states:

> "(k) <u>Cash Collateral Rserve</u>. At closing, New Borrower shall deposit with Capmark a cash collateral reserve of $70,810 (the "Cash Collateral Reserve") which Capmark shall hold as additional security for New Borrower's obligations under the Loan Documents. Upon the occurrence of an Event of Default, the Lender may apply the Cash Collateral Reserve to New Borrower's obligations under the Loan Documents in such order as the Lender shall determine in its sole and absolute discretion. In the event that the Loan is paid in full or the Property achieves a debt service coverage ration of 1.20:1 based on a trailing six months average, and provided no event of default has occurred and is continuing, the Lender shall release the Cash Collateral Reserve to the New Borrower. The Cash Collateral Reserve shal l be held in a separate interest-bearing account (the "Cash Collateral Reserve Account") with the Lender. New Borrower hereby grants to Lender a first priority security interest in the Cash Collateral Reserve and the Cash Collateral Reserve Account and shall take such actions as required by Lender to perfect

such security interest. In no event shall New Borrower be entitled to withdraw funds from the Cash Collateral Reserve Account for any purpose whatsoever."

Thus, contrary to Wells Fargo's arguments made at the hearing, there is no absolute prohibition under the Agreement to the Debtor's use of the Reserve to pay debt service, as Wells Fargo only retains discretion over the "order in which items are paid", not the ability to use the Reserve itself. To be sure, such use remains subject to Wells Fargo's consent under the Agreement, but even at that, all collateral in bankruptcy is also subject to the Bankruptcy Court's overriding power to allow use of cash collateral over the objection of the secured lender under 11 U.S. C. §363(c)(2)(B).

Indeed, as the name implies, the Reserve was specifically established to address circumstances such as are presented here, where the mortgage goes into default and monies are needed to pay debt service. If the Debtor is to be strictly held to the requirements of 11 U.S.C. §362(d)(3), the Reserve provides an important life-line to allow the Debtor to meet its statutory obligations.

From a legal perspective, §362(d)(3) also contains an interesting proviso, namely that the prohibitions concerning use of cash collateral under §363(c)(2) are not operative. Specifically, §362(d)(3)(B) states that monthly payments "… may, in the debtor's sole discretion, <u>notwithstanding Section 362(c)(2)</u>, be made from rents or other income generated before, on, or after the date of commencement of the case …" (emphasis applied). Thus, it appears that

cash collateral, which is the name of the Reserve, can, in fact, be used to pay debt service at the Debtor's discretion and not Wells Fargo's.

The quoted language also debunks another erroneous point raised by Wells Fargo during the hearing. There is no requirement that monies used to make monthly payments of interest under §362(d)(3) come from collection of post-petition rents. Quite the opposite, they can come from "other income" generated by the Debtor pre-petition. This includes the Reserve, since it was funded by the Debtor.

Thus, in view of the lack of an express restriction in the Agreement, and the Debtor's statutory ability to use cash collateral to pay post-petition interest, the Reserve, in fact, provides an appropriate vehicle to assist the Debtor in complying with its §362(d)(3) requirements.

### III. CONDITIONS

At the hearing, the Court also requested the Debtor's position as to possible conditions concerning stay relief under 11 U.S.C. §362(d)(3). In this regard, the Debtor proposes that the motion can be fairly and properly decided under a conditional order by which the Reserve is allocated to pay on-going post-petition interest and Wells Fargo is given the right to proceed with its foreclosure action, if, and only if, the Debtor defaults with respect to the following requirements:

(i) Use of the Reserve to pay all accrued post-petition interest to be applied immediately by Wells Fargo upon entry of an order.

(ii) Use of the Reserve to pay future post-petition interest until such time as the Reserve is exhausted, whereupon the lifting of the automatic stay will be deemed permanent unless the Debtor files and seeks confirmation of a plan of reorganization that has a reasonable prospect for success prior to that time.

(iii) The Debtor continues to operate and maintain the property in a suitable and reasonable manner such that Wells Fargo's collateral does not materially diminish in value.

Dated: New York, New York
       January 7, 2010

>                          GOLDBERG WEPRIN FINKEL
>                          GOLDSTEIN LLP
>                          Attorneys for the Debtor
>                          1501 Broadway, 22nd Floor
>                          New York, New York 10036
>                          (212) 221-5700
>
>                          By: _____
>                              KEVIN J. NASH
>                              A Member of the Firm

H:\sylvia\word\Crown Ohio Investments LLC -NEWAB 28261\SUPPLEMENTAL MEMORANDUM OF LAW -1-7-10v2.doc

5