**BRYAN CAVE LLP**
Michelle McMahon (MM-8130)   **Hearing Date: January 20, 2010**
1290 Avenue of the Americas
New York, New York 10104
Tel: (212) 541-2000
michelle.mcmahon@bryancave.com

Keith Miles Aurzada, Esq.
*Admitted Pro Hac Vice*
JP Morgan Chase Tower, Suite 3300
2200 Ross Avenue
Dallas, TX 75201
Tel: (214) 721-8000
keith.aurzada@bryancave.com

*Counsel for Wells Fargo Bank, N.A. as Trustee for the Registered Holders of LaSalle Commercial Mortgage Securities Inc., Commercial Mortgage Pass-Through Certificates, Series 2005-MF1, acting by and through its Special Servicer, Capmark Finance, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x
                                                              :   Chapter 11
**In re:**                                                    :
                                                              :   Case No. 1-09-46767 (DEM)
**CROWN OHIO INVESTMENTS, LLC**                               :
                                                              :
                                                              :
            **Debtor.**                                       :
-------------------------------------------------------------x

### REPLY TO DEBTOR'S OPPOSITION TO SUPPLEMENTAL MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**TO THE HONORABLE DENNIS E. MILTON,**
**UNITED STATES BANKRUPTCY JUDGE**

Wells Fargo Bank, N.A. as Trustee (the "Trustee") for the Registered Holders of LaSalle Commercial Mortgage Securities, inc. Commercial Mortgage Pass-Through Certificates, Series 2005-MF1 (the "Trust"), acting by and through its Special Services, Capmark Finance, Inc. ("Capmark"), by and through its undersigned counsel, hereby submits this Reply to Debtor's

Opposition to Supplemental Motion for Relief from the Automatic Stay (the "Opposition"), and in support thereof states as follows:

1.   In the Opposition, the Debtor admits that the Trustee is entitled to monthly payments of $9,474.95 pursuant to 11 U.S.C. §362(d)(3)(B)(i). The Debtor goes on to assert that the Trustee is somehow at fault for the Debtor's failure to make the required monthly interest payments through its failure to "utilize funds specifically set aside as an interest reserve to pay debt-service." *See Opposition* at ¶3. This assertion is factually incorrect and legally flawed and in no way does it excuse the Debtor's failure to comply with its statutory obligations under 11 U.S.C. §362(d)(3)(B)(i).

2.   Pursuant to that certain Assumption and Release Agreement dated December 31, 2007 (the "Assumption Agreement")[1], between the Debtor, the Trust and Capmark, the Debtor agreed to the following:

> (k)   <u>Cash Collateral Reserve.</u>  At closing, [the Debtor] shall deposit with Capmark a cash collateral reserve of $70,810 (the "Cash Collateral Reserve") which Capmark shall hold as additional security for [the Debtor's] obligations under the Loan Documents. Upon the occurrence of an Event of Default, the Lender may apply the Cash Collateral Reserve to [the Debtor's] obligations under the Loan Documents in such order as the Lender shall determine its sole and absolute discretion. In the event that the Loan is paid in full or the Property achieves a debt service coverage ration of 1.20:1 based on a trailing six months average, and provided no event of default has occurred and is continuing, the Lender shall release the Cash Collateral Reserve to the [Debtor]. The Cash Collateral Reserve shall be held in a separate interest-bearing account (the "Cash Collateral Reserve Account") with the Lender. [Debtor] hereby grants to Lender a first priority security interest in the Cash Collateral Reserve and the Cash Collateral Reserve Account and shall take such actions as required by Lender to perfect such security interest. ***In no event shall [Debtor] be entitled to withdraw funds from the Cash Collateral Reserve Account for any purpose whatsoever.*** (emphasis added).

---

[1] A copy of the Assumption Agreement is attached hereto as Exhibit A.

3. Debtor's description of this section in the Assumption Agreement as an "interest reserve" is a mischaracterization and misleading. The plain language of the Assumption Agreement clearly indicates that the Debtor deposited sums to be held by the Trust as additional collateral for the Debtor's obligations and not merely as an interest reserve. The Debtor's factual assertion that the Trustee and Capmark are culpable for the Debtor's failure to pay the amounts required by 11 U.S.C. §362(d)(3)(B)(i) due to their failure to utilize the funds held in the reserve is further belied by the language quoted above which makes it clear that the Lender has absolute discretion to apply the reserve as it sees fit upon an event of default. Thus as a factual matter the reserve account maintained by the Trust is not an "interest reserve."

4. Even if the reserve account were merely an interest reserve, neither Capmark nor the Trustee would be free to apply the money to the Debtor's obligations post-petition without running afoul of the automatic stay. *See* 11 U.S.C. 362(a)(4), (6) and (7).

5. Finally, as set forth above, the cash in the reserve account is cash collateral securing the Debtor's obligations to the Trust, and the use of such cash is prohibited by Section 363(c)(2). The Debtor has not obtained consent or authority to use the Trust's cash collateral. Nor, does the cash in the reserve account fall within the exception in Section 362(d)(3)(B)(i) permitting use of certain cash collateral to make the monthly interest payments. Section 362(d)(3)(B)(i) provides that the Debtor may, notwithstanding Section 363(c)(2), make the monthly interest payments from "rents or other income generated before, on, or after the date of the commencement of the case by or from the property." 11 U.S.C. §362(d)(3)(B)(i). The reserve account the Debtor asserts should be used to pay its obligations under Section 362(d)(3)(B)(i) was established on the day the Debtor acquired the property and presumably before any rents or income were generated. Therefore it is unlikely that the reserve constitutes

3

"rents or other income generated by or from the property." As such, the cash in the reserve account is not within the Section 362(d)(3)(B)(i) exception to the prohibition against use of cash collateral contained in Section 363(c)(2). Thus, the Debtor is not entitled to use the funds in the reserve to satisfy the statutory requirements of 11 U.S.C. §362(d)(3)(B)(i).

WHEREFORE, the Debtor's Opposition should be overruled and the Court should grant the Trustee relief from the automatic stay pursuant to 11 U.S.C. §362(d)(3) to pursue its remedies against the property under state law, together with such other and further relief as is just and proper.

January 7, 2010.

                                  **BRYAN CAVE LLP**

                                  By   /s/ Michelle McMahon
                                  Michelle McMahon (MM-8130)
                                  1290 Avenue of the Americas
                                  New York, New York  10104
                                  Tel:  (212) 541-2000
                                  michelle.mcmahon@bryancave.com

                                  Keith Miles Aurzada, Esq.
                                  *Admitted Pro Hac Vice*
                                  JP Morgan Chase Tower, Suite 3300
                                  2200 Ross Avenue
                                  Dallas, TX 75201
                                  Tel:  (214) 721-8000
                                  keith.aurzada@bryancave.com